Thank you, Your Honor. May it please the Court, I'm Robert Jobe, and I'm appearing today on behalf of the petitioner Martín Pérez-Valencia. Would you move the microphone just a little closer? There, that's great. Thank you. Martín Pérez-Valencia. And we're talking. Yes, I shall. This case concerns a motion to reopen that my office filed, in which we allege that Mr. Pérez-Valencia's former attorney, Carolyn Reinhold, who resigned from this Court with disciplinary proceedings pending, rendered ineffective assistance of counsel, both in presenting Mr. Pérez-Valencia's cancellation case to the immigration judge and on appeal, on appeal at the Board of Immigration Appeals and in the Ninth Circuit. The Board of Immigration Appeals addressed the merits, and they found dispositive, really, their conclusion that there was no inadequate representation at all, either at the hearing or during the appeal process. I assume that when, if you put an affidavit and you say, in a way that's not totally incredible, Lawyer X is a great turkey and fouled up this case. Right. And the government puts in affidavits from Lawyer X saying, I'm no turkey, it's your idiot client who did it. Right. I take it your position would be that the BIA can't really resolve the issues of fact. Right. So when it says there's no evidence that the lawyer was incompetent, that's just wrong. They can't make that decision unless, of course, your affidavit's so ridiculous that any darn fool could say that that couldn't be true. Right? Exactly. Our position is that, obviously, there was evidence. The issue is whether you're going to credit that evidence, and you can't make that determination based on the papers. Right. You take this to prejudice. Well, in that event, it seems to me the issue is there should have been a remand so that there could have been an evidentiary hearing on those issues that were in dispute. Right. Now, before we get to prejudice, which I think is a key here, I gather your position would be that you have to take the petitioner's allegations as true in deciding whether or not to grant the motion to reopen. If they fail on the face, then that's the end of it. Right. But if it establishes a prima facie case and an effective assistance, even if opposed, then the B.I. should have a hearing. Exactly. Okay. At a minimum, we get a hearing. All right. Now to prejudice. Well, before we even get to prejudice, going back, I mean, certain things are not in dispute. You know, certain issues are in dispute because the government that Carolyn Ryan held is contesting much of what we claimed. Right. But certain issues that we've raised, they didn't contest and they're really not in dispute. I mean, for example, we argued that Ms. Ryan had failed to file a brief to the Board of Immigration Appeals. She submitted an affidavit saying that she had. She said I did. She did. That's in dispute, isn't it? Well, there's absolutely no evidence to support what she's saying. But you're. It's not in the record. But aren't you now making a credibility. You're wanting to make a credibility determination. She says I filed it. The BIA says she did. It's conceivable, just barely conceivable, that something that reaches a court like the BIA or a circuit court or something could go astray. So the person might have filed and not have. But that's just credibility determination. Isn't it? Well, I guess you could see it that way. Yeah. I mean. Well, how else would you see it? It seems that, frankly, in my opinion, that's one of those situations where the assertion is so incredible that it simply can't be given any weight. Does it matter, though? I mean, in the sense of it's not filed, you're prejudiced. That's my view. I mean, and then the question then is, was there ineffective assistance of counsel that led to the failure to file? Right. I mean, they're two separate issues. Well, I mean, in the notice of appeal, she indicated an intention to file the brief. There's no dispute about that, and the record reflects that no brief was filed. The affidavit that we presented indicates that no brief was filed. On the issue of prejudice, you know, when we filed our brief in this case, Gregorian was the law, and that decision was subsequently withdrawn. Gregorian basically said that where an attorney fails to file a brief in support of an appeal and all we're left with is sort of a bare-bones notice of appeal, which is what we have here, we need to presume prejudice. Now, that decision was withdrawn, and at this point, I suppose that's an open question here in the Ninth Circuit. But you may presume, but in all events, I don't think you conclusively presume it. No, you don't. So if you don't conclusively presume it. Well, here's where I think we need to really focus in on what the BIA said, because the BIA, in my opinion, they never really addressed the issue of prejudice. If you look at their decision, what they said is that we find no evidence that the respondent received inadequate representation at his hearing or in the appeal process. Moreover, we find that the respondent has not demonstrated prima facie evidence that he was prejudiced by any tactical decisions made by the respondent's prior attorney. They're saying there was no attorney error here, and there's no prejudice flowing from whatever tactical decisions she may have made. But our view is that there were errors, and some of those errors, I think, are undisputed. And they never really got – because they said there was no attorney error, they never actually followed up and answered the question of whether those attorney errors that we're alleging led to prejudice. Well, sure, they say furthermore. Take the next sentence. Furthermore, we note that all the evidence. Yeah, we examined all the evidence that's been presented to us regarding alleged hardship we've examined, and we decided ain't none. Well, in that, Your Honor, they're not even applying the correct standard. I mean, the issue here when we're alleging ineffective assistance of counsel is whether the attorney errors may have affected the outcome. They're not applying that standard. You should have said there's nothing before us that would indicate that there could be any effect on the outcome. We've got all the evidence. We've got all the evidence. No, that's not – We've got the evidence of the supposed hardship, and we got it on the motion for rehearing and consider it on the first motion for rehearing. We've considered the evidence of this. Actually, no, that's not what they're saying. I mean, if you look at it closely, what they're saying is that it was found not to meet the stringent standard to establish exceptional and extremely unusual hardship. No, that's not the test. The test in the ineffective assistance of counsel context is whether we have a plausible claim, essentially, whether it may have affected. So walk me through this. Let's assume that we granted and remanded, and that the BIA found ineffective assistance of counsel. Right. At that point, it goes back to the IJ, correct? It depends. I mean, because we were asking for both reopening so that we could pursue the cancellation case and reissuance. The board never even grappled with our request that they reissue the decision. And I think that's important because, again, one of the things that's undisputed here is that Ms. Reinholt never informed the petitioner of his right to appeal that May 2004 decision. Right. So the other – I guess the alternative remedy for you would be reissue it. We'll take it up on a petition for review. Is that right? Exactly. And that's important because Ms. Reinholt herself, when she filed her petition for review from the denial of the motion to reopen that she filed, she raised a claim that there was essentially a due process violation when the judge denied her motion to continue. That's not properly before the court, but it's an issue that could have been raised if he had been properly informed of his right of appeal, but he was never given that information. So he was denied his right to raise that issue in the Ninth Circuit. And we asked, in order to rectify that, that the Board reissue its May 2004 decision, and the Board just simply ignored that request. I see. It didn't rule on it one way or the other. Right. Exactly. Okay. Thank you. Yeah. I'll reserve the balance of my time. Good morning, Your Honors. May it please the Court. I'm Anthony Nicastro. I represent the Attorney General in this case. And, Mr. Nicastro, you have to speak into the mic. It's acoustically – this is an acoustically challenged courtroom, so we appreciate that. Yes, Your Honor. I have to mention some older judges who are also acoustically challenged. Yes, Your Honors. I'd start the argument in addressing the prejudice issue first and come back to the ineffective assistance allegation second. In this particular case, the government maintains that the Board didn't abuse its discretion because, in effect, there was no prejudice. All of the information, all of the evidence that was – that Mr. Perez-Valencia had on the issue of the hardship determination on children was before the immigration judge and also before the Board during its first motion to reopen. Well, let's start from the place we left off on the right to appeal. What's wrong with the argument on prejudice that the – what happened before the BIA deprived her of the right to appeal to this Court? I'm sorry. I'm saying appeal, but I mean petition for review. Well – Why isn't that enough to establish prejudice? Well, there doesn't seem to be a direct argument that somehow her action after the Board issued its first decision back in 2005, somehow there was some agreement that there would be a petition for review filed. In all of the affidavits that were filed, there doesn't seem to be a contention and the contracts between the client and the attorney that are included in the record don't describe any contract between the two to appeal the decision, the first decision to this Court. Well, he says in his affidavit, I was not informed I could file an appeal of the Board's decision with the Ninth Circuit Court of Appeals. Well, the other – the affidavit from Mr. Lanier's also says that, yes, they said you have – here's your options. But I think we really do – I mean, the evidence is, if we just take his allegations, that he wasn't told. Well, if you – So presuming that's true, just for the sake of argument. Yes, yes, Your Honor. If you just take his allegations. I think that this is an unusual case because there are very few, at least that I've seen during my tenure, where you have an ineffective assistance of counsel claim and an affidavit by the petitioner and three affidavits from people – one from the former attorney, two from employees within our office refuting those allegations. Right. It's fairly rare. I think that's sort of a separate issue. I mean, my take on that, if you want to get into it, is that when you have – the BIA can't resolve it on the basis of an affidavit. You have to have a hearing. Well, I'm not sure that the BIA is equipped to have such a hearing like a habeas court would have in federal court on a hearing of ineffectiveness because – Or reopen and remand to an IJ for a hearing. Well, then they would have to obviously call the attorneys that refute or just judge it on the affidavit. I mean, they're – Why? I mean, in a habeas proceeding, we resolve those issues all the time on an evidentiary basis. Why should an administrative agency say, okay, we're going to credit – in a credibility contest, we're going to credit this set of affidavits over this set of affidavits? Well, I think they do a balancing test and they look at the affidavit from – because like I mentioned earlier, Your Honor, there aren't very many cases where they have these really conflicting affidavits. I agree with you. And in this particular case, they'll look at the petition's affidavit, which they weighed, and they noticed some things like he said the contract was in English. Well, the contract's in the record, and it is in Spanish, and that's corroborated by the petition – the counsel – the former counsel's thing. So they could, in certain cases, look at the affidavit and say, we'll weigh all the evidence before us and then do it, because at least I am unaware of any case where an ineffective assistance counsel has gone, remanded to the board and then remanded to the immigration judge to take factual evidence from former attorneys to try and get on the record what actually happened here. But they don't even say that. I mean, they really don't even say, we've looked at his evidence and we've looked at the competing evidence and we've determined that we don't believe him. They just say, we find no evidence. Now, that's clearly wrong. Is that not true? Well, no evidence, yes. Obviously, there is – yes, Your Honor. Obviously, there is evidence from the petitioner in the form of an affidavit. They're wrong. They're just plain wrong, aren't they? Well, they could have been a lot clearer and more precise. But in that instance, yes, when they say no evidence – No, that's wrong. That's not – yeah, that's not correct in the fact that there is an affidavit presented. They're using no evidence colloquially. They're just saying, well, colloquially, we find no evidence that we choose to claim it. Sometimes you must choose colloquially. Yes. Yes, Your Honor. It has to happen. But they are an administrative agency, correct? I'm sorry, Your Honor? They are an administrative agency. Yes, Your Honor. And we are supposed to take them at their word and not make things up for them, correct? Well, that's true. Obviously, you can't make things up. You don't want us to. Yes. No, you can't – obviously, you can't make things up. You have to look what's in the context of the four corners of the review of their decision. In the macro sense, I believe that you would prefer that we keep our cotton-picking noses out of things, and if the BIA says X, X it is, in the macro sense. Yes, Your Honor, of course. Well, they said X. They said there's no evidence. There's evidence. So they're wrong about IAC, probably. Well, I guess in the macro sense, just to answer your question, if they look at all of the evidence and then they say there's no evidence that the Respondent received inadequate representation, I guess if they look at all of the affidavits and say, look, there isn't any evidence here when we looked at everything that there is inadequate evidence. If you take it in a very partial, in other words, no evidence, then obviously that's not correct because there's an affidavit in here. But if you look at the entire sentence, it's possible that they looked at it and said there's no evidence of inadequate representation. Now, they could have gone on for the Court's purpose of review and said we have his affidavit, we have these three affidavits, we looked at it, we compared the factual allegations. We don't find that there's any evidence of ineffective assistance to counsel as it meets that term. How would you like to talk about prejudice? I would love to talk about prejudice, Your Honor. In this particular case, the documents that were submitted at the immigration judge's hearing back in 2005 consisted of the 19-page detailed report concerning the educational needs of Elizabeth, the testimony of petitioner on his daughter, Elizabeth, and a letter from the speech and language pathologist on his daughter, Elizabeth. This was all before the immigration judge at the removal hearing. Back in 2003, I believe. Right. And that's typical evidence in a cancellation case, right? You may or may not, the I.J. may or may not determine it meets the standard, but it's typical evidence. It's typical evidence if there's educational needs for the child, yes, there would be. So why isn't that enough to meet the low threshold of prejudice? Now, what the BIA did was to go ahead and say, yeah, we've looked at the merits and there's no change. But is that the standard? Could we have even reviewed the hardship determination if they'd appealed it? No, you couldn't review the hardship determination if they appealed it. And I think in this particular case, you not only have the prejudice claim is that no evidence was presented on this issue. And that's just not, that's not just, that's factually incorrect. And in addition, you have a motion to reopen, which is extremely detailed, which included 39 pages of documentation further on Elizabeth. I guess what I'm asking you to address, and I understand your point. I don't want to cut you off, but our time's running down. I want you to respond to Petitioner's point about the standard that the board uses for evaluating prejudice in an IAC case. Now, you know, it's quite correct. We have no jurisdiction to look one way or the other on the discretionary determinations. That's completely granted. On the other hand, we do get to peek behind the curtain in looking at prejudice. And there are two ways of looking at it. I believe your way is to say, look, they looked at the whole record. They really decided the case all over again. There's no hope. The second way of looking at it is when the standard review is, was there, is there enough to be able to go to a hearing on it? In other words, is this evidence sufficient to get to an IJ? So just saying, no, that evidence is completely irrelevant and so forth. So I guess I'm in a roundabout way asking you to respond to Mr. Jobe's point. Yes, Your Honor. If there was some evidence submitted with Mr. Jobe's motion to reopen, the second motion to reopen, like, here's what they should have considered. Here's things they should have had. Here's reports that weren't presented. There's nothing like that in the motion to reopen. There's no other evidence that they're saying, please consider. And this is it. It doesn't get any better than this. I'm not sure what they didn't present anything in the motion to reopen. Like, here's five letters from education. Here's an assessment by a psychologist. It's not there. Would you turn briefly then to the point I started with, which is, why isn't it enough to show prejudice by depriving someone of the right to appeal or file a petition for review in this court? He says, I was never told. We know that it's late and certainly wasn't filed on the first instance. Why isn't that enough? Well, Your Honor, again, that would necessitate believing one affidavit over the other. But leaving that aside, hypothetically, in the first part of your question, the appeal to the board, the board adjudicated the appeal. They had a notice of appeal that outlined what the allegations were. There doesn't seem to be a brief filed in the record on appeal, but they did have his allegations on what he was going to – he asked the court to review. What about the – what's the petition for review to this court? Your Honor, without more on what the definition – I mean, if there were – in certain cases, yes, it could be a prejudicial action by a former counsel. If they – if it was known you have to appeal, here's my money, here's my timeline, and it's all laid out and they didn't – they didn't file the appeal. In some cases, that could be prejudicial conduct enough to remand the case. Why not here? I'm sorry? Why not here? Why not here? Because, again, it's not – it's not clear. Again, you have conflicting affidavits on one hand saying I did it and on one hand saying no, we didn't have that. Well, is – does the resolution of the issue from your perspective rise or fall on the affidavits then? On the – on the first portion of the analysis, the ineffectiveness of a counsel, yes, but not on the prejudice. No, I mean on the prejudice, because you're saying – if I understand your answer correctly, yes, it's prejudice if you – I told my attorney to appeal and she didn't or I wasn't informed of the rights to file a petition for review and she didn't file it to this court. Your argument seems to be, look, you can't believe that affidavit and, therefore, there's no prejudice. So my question to you is does it rise or – does your argument on prejudice in this narrow sense rise or fall on the affidavits? Not in this particular case, Your Honor. Why? Because I don't think that the prejudice claim that petitioners are making here is that goes back to that first decision. I think the prejudice claim that they're making is, look, all of my hardship evidence wasn't before them and I was denied the ability to get that evidence in some way, shape, or form. You know, we're way over your time and I hate to interrupt you, but it sounds to me like what you're saying is, look, there was no issue to appeal. There was nothing to appeal. You couldn't consider hardship. Right. That's the other aspect of it. There is no hardship. I mean, they did make an argument in their notice to appeal, to be fair, of some wrongful deniance of a continuance that the immigration judge made. So in that aspect, that may have been reviewable. Okay. Yes, Your Honor. Very good. Thank you. Our questions have taken over time, but it was instructive for us, so thank you. Our claim with respect to – we claim that Ms. Reinholt failed to inform Mr. Perez-Valencia of his right to appeal that May 2004 decision. And notwithstanding government's representation to – government's representation to – there's nothing in any of the affidavits by these three persons in Ms. Reinholt's office that contradicts that. There's nothing at all. They don't address it. Now, going to your question there, Judge Fernandez, because that seems to be the key question here on prejudice. What could they have raised? Well, obviously, they could have and they would have been able to raise a claim under Padilla-Padilla, and they would have won because under Padilla-Padilla, the board's summary affirmance of the IJ's decision didn't allow the board to reduce the voluntary departure period from 60 days to 30. Ninth Circuit law on that is exactly on point. It would have been controlling. If they had appealed that, they would have won. The second issue that they could have raised is the one that Ms. Reinholt attempted to raise when she filed her petition for review from the denial of the motion to reopen that she filed. She claimed in that petition, in that petition for review, that the immigration judge denied her client a full and fair hearing by denying her request for a continuance and preventing her from presenting what she considered to be a crucial witness. Obviously, that due process claim was reviewable if and would have been reviewed if Ms. Reinholt had informed Mr. Perez-Valencia of his right of appeal. Do you have any hope, going to the second aspect of prejudice, what is on the record that would give us any hope that your client could succeed on a cancellation case? Well, there were documents that were submitted relating to the children's need for special education and there were documents submitted to some extent about the unavailability of those special education programs in Mexico. So, yeah, I have some hope. It's certainly not a clear-cut case. I wouldn't allege that. It's not a clear-cut case. But I think we meet the standard that the outcome may have been affected by the incompetence that was rendered in this case. Okay. Thank you very much for your arguments. It's a very interesting case. And it will be submitted. Do you have another question? No. No, no, no.
judges: Aldrich, Fernandez, Thomas